**EXHIBIT 1-A**



January 30, 2019

Ramesh Subramanian,
37 Oak Ridge Drive,
Voorhees, NJ 08043.

Dear Ramesh,

It is my pleasure to offer you the position of "**Chief Commercial Officer**" with Aragen Bioscience Inc. ("Aragen", the "Company"), a 100% subsidiary company of GVK Biosciences (India), starting Friday February 1, 2019 or at another mutually agreeable date. In this position, you will report to Chief Executive Officer of the group, covering **the given scope for GVK BIO & Aragen**.

You will be an employee at will, whose employment may be terminated either by you or by the Company at any time and for any reason, or no stated reason, subject to any benefits provided under Annexure 1. Any controversy, claim arising out of or relating to your employment by Aragen, or the termination of that employment, will be settled by binding arbitration. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction over the matter.

You shall devote your full business time, best efforts, skill, knowledge, attention and energies to the Company's business and to the performance of your duties and responsibilities as an employee of the Company, and shall not engage in any other business activities without prior approval from the Company. By accepting employment with the Company, you represent that you are not bound by any employment contract, restrictive covenant or other restriction preventing you from entering into employment with or carrying out your responsibilities for the Company, or which is in any way inconsistent with the terms of this letter.

Your duties will be performed from your home office at 37, Oak Ridge Drive, Voorhees, NJ 08043 subject to business travel as required.

For your services, you will be paid a base salary at the rate of **USD 308,000** per year. Your salary shall be payable in accordance with the Company's standard payroll schedule and shall be subject to applicable taxes and withholdings. Your salary shall be reviewed not less often than annually in accordance with the Company's policies and standard procedures, and may be adjusted by the Company in its sole discretion.

In addition, you will receive Sales Bonus compensation on attainment of Sales targets established by your manager on an annual basis. Your target Sales Bonus will be 30% of your base salary i.e. **USD 92,400** per year. The actual amount of your Bonus, if any, will be paid (but in no event later than three months following the year in which it is earned), provided that you are still employed on the last day of the year in which it is earned, and have neither resigned nor been terminated for Cause before the date of payment.



Your Sales Bonus compensation is in accordance with GVK BIO's (parent company) FY'20 Sales Bonus Compensation Plan. This will be calculated and paid annually. Company reserves the unilateral right to modify the Sales Bonus Compensation Plan at any time.

In addition to the above, you will receive a car allowance of (i) **USD** $750 per month which includes gasoline, maintenance purchased for that auto, and (ii) the Company will either provide, or reimburse you for, a computer and peripherals for home office use and a cell phone (and vonage for abroad calls) for business use, and will reimburse you for internet and cell phone fees in accordance with company policy.

In addition, reasonable incidental expenses associated with client contacts, including highway tolls, will be reimbursed in accordance with Aragen's established policies.

Business Travel will be in accordance with Company policy, with any upgrades in class to be approved by the Company, none the less, the individual will be allowed to use business class for any international travel exceeding 7 hours in duration.

The Company has an establish 401 k deferred compensation plan that will allow you to defer your compensation in a retirement savings plan. The Company will match any amount that you defer, on a dollar for dollar basis, up to the 4% of your annual gross salary.

State and federal payroll taxes and your share of benefit contributions will be withheld from your salary, your bonus and from your incentive compensation payments.

Your performance and compensation will be reviewed periodically in accordance with Aragen's standard practices, at which time adjustments may or may not be made.

Your normal work week will commence on Monday and go through Friday, however, at times it is expected that you may need to work overtime on weekends and weekdays in order to fulfil the requirements of your position. In such cases, you will not be eligible for overtime pay.

As a full-time employee, you will be eligible for the following benefits.
- Medical, vision and dental insurance (a portion of the premium for each is paid by the employee)
- Vacation- accruing at the rate of 15 days per year and Sick leave accruing at the rate of 5 days per year
- Ten paid holidays
- 401K plan with Matching

All of the above is reflective of, and subject to, the policies in effect at the present time and may be re-evaluated and revised by the Company at its discretion at any time.

As a condition of employment, at the time you report to work, you will be required to produce evidence that you are eligible to work legally in the United States and you will be required to sign Aragen's Employment and Confidentiality Agreement.

You recognize that during your employment, you will be involved in matters of a highly confidential nature and you agree to maintain all information with regard to the Company in the



strictest confidence. Further, as a condition of employment and prior to your Start Date, you are required to sign the Confidentiality and Ownership of Confidential Information (the "Confidentiality Agreement" that accompanies this letter, the terms of which are incorporated into this agreement by reference. Either during or after your employment by the Company, you will not disparage the Company or its affiliates, or its or their officers, directors, employees, products or services.

In the event of any dispute or claim relating to or arising out of your employment relationship with the Company (including the interpretation of this letter) and arising from any source (including but not limited to federal, state, and common law), you and the Company agree that all such disputes shall be fully and finally resolved by binding arbitration conducted by under the auspices of the American Arbitration Association ("AAA"), provided that the Company may bring suit for relief, including injunctive relief, for a breach of threatened breach of paragraph 5 or the Confidentiality Agreement referred to therein. This agreement to arbitrate any disputes shall extend to any claims against any affiliate of the Company and, when acting in such capacity, to any officer, director, shareholder, employee, or agent of each party. The arbitrator shall have the same, but no greater, remedial authority than would a court hearing the same dispute and shall have the authority to order such discovery as is agreed upon by the parties or as the arbitrator deems appropriate. The arbitrator shall issue a written award and decision explaining the basis for it. The award of the arbitrator shall be final and binding, and judgment upon it may be entered by any state or federal court having jurisdiction thereof. The Company shall be responsible for the fees and costs of the arbitrator. Any filing or administrative fees shall be borne initially by the party requesting arbitration, but if those fees exceed those applicable in the State of California Circuit Courts, the excess shall be borne by the Company. The prevailing party in such arbitration, as determined by the arbitrator, and in any enforcement or other court proceedings, shall be entitled, to the extent permitted by law, to reimbursement from the other party for all of the prevailing party's costs (including the arbitrator's costs and fees), expenses, and attorneys' fees. The arbitration shall be conducted in the State of California, at a time and place to be determined by the arbitrator unless the parties agree otherwise.

This letter (including the Confidentiality Agreement) reflects the full and complete understanding and agreement between the Company and you regarding your employment with the Company, and it supersedes any prior written or oral negotiation, offer or agreement regarding your employment relationship with the Company. This letter, including its terms and conditions, shall be governed by the State of California law. This letter, including its terms and conditions, may not be modified or amended except by a written agreement, signed by an authorized representative of the Company and by you (and your at-will employment status may not be changed). This letter may, however, be supplemented by written policies and procedures established by the Company from time to time, which policies and procedures (whether set forth in an employee handbook or otherwise) are generally applicable to the Company's other employees. In the event of a conflict between this letter and any Company policy or procedure, the provisions of this letter shall prevail.

This offer of employment is valid through February 1, 2019, after which it is void. If this offer is acceptable to you under the terms and conditions herein, please email me a signed copy of this letter as soon as possible, but in any event by the end of the business day.



We are looking forward to you joining us. If you have any questions, please do not hesitate to write or call me.

Sincerely,

Manni Kantipudi
Chairman

I accept this employment offer. No oral or other written commitments have been made concerning my employment.

Signature: _____        Date: _____



Annexure 1

a. <u>Termination by the Company for Cause</u>:

Subject to the terms and conditions of this Agreement, your employment with the Company can be terminated by the Company without notice for Cause (as defined below). The term "Cause", as used herein, shall mean

(i) an intentional act of dishonesty by the Executive causing material harm to the Company (for the purpose of the preceding clause, the term 'material harm' includes monetary loss to the Company in excess of $5000);
(ii) the knowing improper disclosure by you of confidential information relating to the Company's business in breach of any agreement to which you are a party that causes material harm to the Company;
(iii) your habitual drunkenness or narcotic drug addiction;
(iv) your conviction (including by plea of guilty or nolo contendere) for a felony crime (A) for theft or fraud or (B) that is punishable by imprisonment (whether or not you are sentenced to imprisonment);
(v) your willful refusal to perform, or the gross neglect of, the duties assigned to you under this Agreement, provided that such duties assigned are consistent with your Position and are lawful and ethical;
(vi) your willful breach of any law that has a material adverse effect on the Company;
(vii) any material breach by you of the terms and conditions of a written policy of the Company in effect during the term of employment, which policy provides that an employee of the Company may be terminated for a breach or violation of such policy; or
(viii) any material breach of the terms and conditions of this Agreement by you.

Termination of employment of you by the Company for Cause pursuant to this Section shall be made by the Company by providing a written notice to you of such termination for Cause (including a description of the events, circumstances or conditions that constitute such for Cause termination). In the event of termination for Cause under this Section, you shall be entitled to receive the Accrued Rights (as defined herein) through the date of such termination.

b. <u>Termination by the Company for Disability.</u>

If the Company determines that as a result of a medically determinable physical or mental illness, injury, or congenital condition, you are unable to perform the principal duties of your employment, with or without reasonable accommodation, it may terminate your employment by reason of Disability, subject to applicable law. Upon termination by reason of Disability, you shall be entitled to receive the Accrued Rights through the date of termination.

c. <u>Termination by the Company without Cause.</u>

Subject to the terms and conditions of this Agreement, if your employment with the Company is terminated by the Company without Cause**,** and other than for Disability, you shall (i) receive the Accrued Rights and (ii) continue to receive as severance pay the current **Base Salary for a period**



**of 45 days** from the date of such termination notification, provided that you execute, and do not revoke a release, in the form acceptable to the Company, of any claims that you may have against the Company and its affiliates relating to your employment by the Company, and the termination of such employment.  Such release must be executed, and the period for revocation must have expired, by the 20th day after the date of termination. In the event that you fail to execute the release prior to the expiration period, or revoke the release, you will forfeit any severance pay and will immediately repay any severance pay previously received, which repayment obligation may be offset against any other amounts owed by the company to you. Each instalment of severance pay shall be considered a separate "payment" for purposes of Section 409A of the Internal Revenue Code. If you obtain other employment within 45 days from the date of termination, your severance will be reduced by your compensation from such other employment. You will notify the company immediately upon obtaining other employment during the severance pay period, and upon request will certify that you have not obtained other employment (or as to the amount of compensation received) as a condition to receipt of further instalments of severance pay.

Accrued Rights shall mean: (i) any Base Salary or other compensation or bonus that was earned up until the date of Executive's employment with the Company is terminated, (ii) reimbursement of approved expenses or other approved amounts incurred by you for official purposes prior to the date your employment with the Company is terminated, and (iii) any rights and benefits that you may have in respect to any other compensation or any employee benefit plans or programs of the Company determined in accordance with the terms of such other compensation arrangements, plans or programs

In case of termination arises due to position elimination, Company will make commercially reasonable efforts to redeploy you into other suitable positions in the organization first, before they invoke the above clause, provided that the foregoing shall not preclude the Company from terminating you in its sole discretion.

Termination by you:

In the event you choose to terminate your employment with the Company we ask that you provide a written notice of **forty five days** to the Company, to ensure the professional coordination and continued success to all parties.  Considering this understanding we would like to extend 45 days severance clause as mentioned above.