# EXHIBIT 1-C



**Seyfarth Shaw LLP**
233 South Wacker Drive
Suite 8000
Chicago, Illinois 60606-6448
**T** (312) 460-5000
**F** (312) 460-7000

rmarsh@seyfarth.com
T (312) 460-5308

www.seyfarth.com

November 11, 2024

**VIA E-MAIL**
**VIA FEDERAL EXPRESS**

Ramesh Subramanian
37 Oak Ridge Drive
Voorhees, NJ 08043
ramesh.wemba35@gmail.com
ramesh.subramanian@pihealthsciences.com

*Re:    Breach of Contractual Obligations to Aragen Bioscience, Inc.*

Dear Mr. Subramanian:

We are outside counsel for Aragen Bioscience, Inc. ("Aragen") and write to you so that you may avoid costly litigation which will be filed against you for your apparent failure to comply with the obligations contained in your Employment Letter dated January 30, 2019 ("Employment Letter") and the Non-Competition, Confidentiality and Ownership of Confidential Information Agreement ("Agreement") that you executed on February 4, 2019, pursuant to your employment with Aragen as Chief Commercial Officer.  So that there can be no dispute or claimed ignorance of your obligations (including your post-employment obligations) to Aragen, a copy of the Employment Letter and the Agreement are attached to this letter.

In particular, the Agreement signed by you contains the following prohibition, in Paragraphs 5 and 6, regarding non-solicitation of Aragen employees, consultants, and clients:

**NON-SOLICITATION OF EMPLOYEES AND CONSULTANTS**

5.  Individual hereby agrees that during his or her Association with ARAGEN, and for twelve (12) months thereafter, Individual shall not directly or indirectly hire any employees of or consultants to ARAGEN, nor shall Individual solicit or induce or attempt to induce any persons who were employees of or consultants to ARAGEN at the time of such termination or during the ninety (90) days immediately preceding such termination, to terminate their employment or consulting agreement with ARAGEN.

**NON-SOLICITATION OF CLIENTS**

6.     Individual agrees that during his or her Association with ARAGEN and for twelve (12) months thereafter, Individual shall not, directly initiate contact or solicit any Clients of ARAGEN for the purpose of selling or supplying to such Clients any products or services which are competitive with or substantially similar to the



products or services sold or supplied by ARAGEN at the time of Individual's termination, but only to the extent that Individual's initial contact with such Client was in connection with his or her Association with ARAGEN, or that he or she obtained Confidential Information regarding such Client in the course of his or her Association with ARAGEN. The term "Clients" means any business or organization that (a) was a client of ARAGEN at the time of the termination of Individual's Association with ARAGEN or at any time in the thirty (36) months preceding such termination; or (b) became a client of ARAGEN within six (6) months after the termination of Individual's Association with ARAGEN.

Not only that, you expressly acknowledged and agreed that Aragen's confidential information was only to be used for purposes of your employment with Aragen, such that you would maintain and protect the confidentiality of Aragen Confidential Information (as defined) both during and after your employment. (See Agreement, ¶3.)

Despite these express obligations to which you unequivocally agreed, we have learned that since you voluntarily resigned your employment with Aragen, you have accepted employment with PI Health Sciences, a company which is also in the CRDMO Business as that of Aragen, and solicited Aragen employees and clients to PI Health Sciences. Specifically, Aragen learned that you solicited or induced Dr. Mahavir Prashad (Senior Vice President), Dr. Simon Haydar (Executive Vice President), and Mr. Nageshwar Kompalli (Vice President & Head, Project Management and Operational Excellence of Aragen) to pursue or accept employment with PI Health Sciences. Moreover, each of these individuals also signed agreements with Aragen containing post-employment covenants to protect Aragen's trade secrets, confidential information and client relationships. In addition, Aragen learned that you have solicited certain Aragen clients for the benefit of PI Health Sciences (also in tandem with Dr. Prashad), including but not limited to Dr. Joseph Kaloko of Revagenix. Your conduct is in direct violation of the non-solicit and confidentiality and other post-employment obligations outlined in your Agreement and the Employment Letter.

As you are certainly aware, your obligations (including the post-employment obligations) under the Employment Letter and the Agreement are designed to protect the legitimate business interests of Aragen and ensure fair competition. Your actions not only undermine the express terms of the Agreement and the Employment Letter, but also pose a significant risk to our business operations and employee and client relationships.

This letter serves as formal notice and demand that you immediately cease and desist all solicitation activities related to Aragen employees and clients. **_We expect you will promptly comply and provide a written assurance in response to this letter no later than November 18, 2024, confirming that the activities have ceased and a detailed account of efforts to safeguard Aragen's Confidential Information and client relationships_**.

Failure to comply with these demands will compel Aragen and its group companies to initiate appropriate legal action against you, including but not limited to seeking injunctive relief, damages, and any other remedies available under the law or in equity. Please be advised that Aragen and its group companies reserve all rights to pursue further claims and legal remedies available to them. Additionally, because of the threat of potential legal action, you—and all those acting in concert with you—are advised to preserve and not alter or delete any devices, documents, communications, email or information relevant to this matter.



We trust that you will take this matter seriously and act accordingly to avoid further escalation.

Very truly yours,

SEYFARTH SHAW LLP


*/s/ Robyn Marsh*


Robyn Marsh


RM
Enclosures
cc: Suresh Anubolu (w/enclosures)
 Naga Saibabu (w/enclosures)
 Ramakrishna Kasturi (w/enclosures)
 Elizabeth Garcia (w/enclosures)
 Christian Rowley (w/enclosures)

aragenbio.com

# CONFIDENTIALITY AND OWNERSHIP OF CONFIDENTIAL INFORMATION AGREEMENT
# ENTERED INTO THIS 4th DAY OF February 2019.

BETWEEN:                                  ARAGEN BIOSCIENCES INC.
                                                     ("Aragen")

AND:                                            Ramesh Subramanian
                                                     ("Individual")

1. <u>Preamble</u>. Aragen provides Marketing services and a broad spectrum of services across the Research & Development and Manufacturing value chain with a focus on speed and quality through its Associate. ARAGEN capabilities include Integrated Programs, Discovery Services, Clinical Development, Contract Manufacturing, Formulations and Informatics. This Agreement contains certain terms of Individual's involvement with ARAGEN, in particular, those relating to non-competition, confidentiality and ownership of confidential information and intellectual property. For purposes of this Agreement, the term "ARAGEN " shall include any other corporation, partnership, joint venture or other entity over which ARAGEN directly or indirectly controls (for the purposes of this definition, "control" means the possession, directly or indirectly, of the authority to direct or cause the direction of the management or policies of such entity whether through the ownership of voting securities, by agreement or otherwise).

2. <u>Definitions</u>

    For purposes of this Agreement:

A. "Association" shall mean, when used in reference to the Individual, his or her employment with ARAGEN, his or her engagement by ARAGEN as an independent contractor.

B. "Confidential Information" includes any of the following:

    (i) any and all versions of all software and related documentation owned, used or marketed by ARAGEN, as well as the software and documentation owned by ARAGEN 's suppliers and used internally by ARAGEN, including all related algorithms, concepts, data, designs, flowcharts, ideas, programming techniques, specifications, "look and feel" and source code;

    (ii) information regarding ARAGEN 's business operations, methods and practices, including marketing and supply strategies, product pricing, margins and hourly rates for staff and information regarding the financial affairs of ARAGEN;

- (iii) technical and business information of or regarding the clients, suppliers, vendors, consultants, agents, end-users and applicants of ARAGEN including information regarding the data processing requirements and the business operations, methods and practices and product plans of such persons;

- (iv) all correspondence, records, working papers, specifications, lists of customers, lists of suppliers, drawings, notes, studies, manuals, schedules, test results or other documents, computer print-outs, computer readable information, computer software object code and source code relating to ARAGEN's business and/or any and all versions of the software and related documentation owned or marketed by ARAGEN ;

- (v) any other trade secret or confidential or proprietary information in the possession or control of ARAGEN, and

- (vi) all Developments (as defined below);

Notwithstanding the foregoing, "Confidential Information" does not include any information, which;

- (i) is or becomes a part of the public domain through no act or omission of Individual;

- (ii) can be shown to be already possessed by the Individual as of the effective date of this Agreement;

- (iii) shall be made available to the Individual on a non-confidential basis by a third party having a right to do so, other than in connection with Individual's Association with ARAGEN;

- (iv) Is disclosed by order of a court of competent jurisdiction; or

- (v) ARAGEN authorizes, in writing, for release.

C. "Developments" shall include and mean:

- (i) software, documentation, data, designs, reports, flowcharts, plans, samples, prototypes, trademarks, specifications and source code, and any related works owned, marketed or used by ARAGEN; and

- (ii) inventions, devices, discoveries, concepts, ideas, algorithms, formulae, know-how, processes, techniques, systems and improvements, whether patentable or not, or copyrightable or not, developed, created, generated or reduced to practice by Individual, alone or jointly with others, during Individual's Association with ARAGEN provided that same result from responsibilities and/or tasks assigned to Individual by ARAGEN .

# ARAGEN
aragenbio.com

## CONFIDENTIALITY

3. Individual acknowledges and agrees that ARAGEN would suffer serious and irreparable damage in the event that Individual discloses Confidential Information to a third party or uses Confidential Information for any purpose other than in the ordinary course of Individual's Association with ARAGEN.

Individual undertakes and agrees:

(i) to maintain and protect, both during and after his or her Association with ARAGEN, the confidentiality of Confidential Information;

(ii) not to, either during or after his or her Association with ARAGEN , disclose, for any reason or purpose whatsoever any Confidential Information to any third party or use any Confidential Information for Individual's own purposes or for any purpose whatsoever in connection with any other or future employment or other associations, whether direct or indirect, or enterprises (including, as principal, consultant or financier) that Individual may have with any company, firm or person other than ARAGEN ;

(iii) that Confidential Information, whether prepared by Individual or under Individual's direction or otherwise, and all copies of any such materials or information shall, at all times, both during the term of Individual's Association with ARAGEN and after the expiration thereof be and remain the exclusive property of ARAGEN and that Individual shall deliver same to ARAGEN upon termination (for any reason whatsoever) of Individual's Association with ARAGEN or within twenty-four (24) hours of written request by ARAGEN ; and

(iv) that none of the information, documents, or materials referred to in the previous paragraph may be removed, sent or transmitted from ARAGEN 's premises (physically, by modem, by fax, by electronic mail or by any other means) without the prior consent of ARAGEN.

(v) that all information generated, received or maintained by or for it on the premises or equipment of ARAGEN or that of its Clients (as defined below), including, without limitation, computer systems and electronic or voice mail systems, is not the property of the Individual, and the Individual hereby waives any property or privacy rights the Individual may have with respect to such information.

(vi) that as an employee or consultant of the company based on job requirement, the individual may have access to employees Personally Identifiable Information (PII) as defined in the PII policy of the

company. In this regard the individual assures that the individual shall protect the same from inappropriate access, use, and disclosure and shall ensure an individual employee's basic right to privacy. Dissemination of this information from the individual internally, shall only be to individuals who have a "need to know" in their official capacity of such information, systems or records. Further the individual has to mandatorily share with external/ regulatory/ statutory bodies any PII of employees, it would be done so with a clause in their agreement/ communication to the external agency/ body stating that the information would be confidential with them and would be used only for the purpose for which it is being shared.

4. Individual hereby undertakes, at the end of Individual's Association with ARAGEN, to hand over to ARAGEN all originals and copies of Confidential Information that Individual may have in his or her possession or under his or her supervision.

NON-SOLICITATION OF EMPLOYEES AND CONSULTANTS

5. Individual hereby agrees that during his or her Association with ARAGEN, and for twelve (12) months thereafter, Individual shall not directly or indirectly hire any employees of or consultants to ARAGEN, nor shall Individual solicit or induce or attempt to induce any persons who were employees of or consultants to ARAGEN at the time of such termination or during the ninety (90) days immediately preceding such termination, to terminate their employment or consulting agreement with ARAGEN.

NON-SOLICITATION OF CLIENTS

6. Individual agrees that during his or her Association with ARAGEN and for twelve (12) months thereafter, Individual shall not, directly initiate contact or solicit any Clients of ARAGEN for the purpose of selling or supplying to such Clients any products or services which are competitive with or substantially similar to the products or services sold or supplied by ARAGEN at the time of Individual's termination, but only to the extent that Individual's initial contact with such Client was in connection with his or her Association with ARAGEN, or that he or she obtained Confidential Information regarding such Client in the course of his or her Association with ARAGEN. The term "Clients" means any business or organization that (a) was a client of ARAGEN at the time of the termination of Individual's Association with ARAGEN or at any time in the thirty (36) months preceding such termination; or (b) became a client of ARAGEN within six (6) months after the termination of Individual's Association with ARAGEN.

OWNERSHIP AND ASSIGNMENT OF CONFIDENTIAL INFORMATION

7. Individual acknowledges and agrees that Individual shall not acquire any right, title or interest in or to the Confidential Information.

8. Individual agrees to make full disclosure to ARAGEN of each Development promptly after its creation. Individual hereby assigns and transfers to ARAGEN and agrees that ARAGEN shall be the exclusive owner of, all of his right, title and interest to each

Development throughout the world, including all trade secrets, patent rights, copyrights and all other intellectual property rights therein. Individual further agrees to cooperate fully and at all times during and subsequent to his employment or engagement with respect to signing further documents and doing such acts and other things reasonably requested by ARAGEN to confirm such transfer of ownership of rights, including intellectual property rights, effective at or after the time the Development is created and to obtain patents or copyrights or the like covering the Developments. Individual agrees that the obligations in this paragraph 8 shall continue beyond Individual's termination of his or her Association with ARAGEN with respect to Developments created during Individual's Association with ARAGEN.

9. Individual agrees that ARAGEN, its assignees and their licensees are not required to designate Individual as the author of any Developments. Individual hereby waives in whole all moral rights, which Individual may have in the Developments.

10. Listed in Schedule I to this Agreement are those developments, works and inventions created by Individual, alone or jointly with others, prior to Individual's Association with ARAGEN, which are exempt from the operation of this Agreement. If nothing is listed in Schedule I, Individual represents that Individual has made no such works or inventions as of the date of this Agreement.

INDIVIDUAL'S RIGHT TO WORK

11. Individual represents and warrants to and in favour of ARAGEN that Individual has the right to be employed and/or engaged by ARAGEN and that such employment and/or engagement shall not violate any applicable law or constitute a default (with or without the necessity of notice) under any agreement (written or verbal) to which Individual is a party. Individual has informed ARAGEN in writing of any and all continuing obligations to any of Individual's previous employers and clients that require Individual not to disclose to ARAGEN any information or work for ARAGEN. ARAGEN acknowledges that it has been advised that the Individual is subject to agreements with prior employer regarding confidential, proprietary or trade secret information of such prior employers.

12. In performing any duties for ARAGEN, Individual shall not use for, or communicate to, ARAGEN or the latter's agents, any confidential, proprietary or trade secret information of any other person (the "Previous Information").

13. Individual shall not bring or instructor authorize any person to bring to ARAGEN , ARAGEN 's facilities or for ARAGEN 's benefit any Previous Information, whether such information or materials be in written, electronic or any other form.

14. It is understood between ARAGEN and the Individual that the terms and conditions of these paragraphs 11 to 14 (inclusive) form an essential part of this Agreement and (without limiting ARAGEN 's other rights and recourses) should, under any circumstances or for any reason (including court order), Individual not be able or entitled to perform any of Individual's responsibilities or functions for ARAGEN , ARAGEN shall be entitled to, at

ARAGEN
aragenbio.com

its sole and absolute discretion, terminate or suspend (with or without pay) Individual's Association with ARAGEN.

## LIQUIDATED DAMAGES, INDEMNITY AND GENERAL

15. Individual hereby acknowledges that the violation of any covenant contained herein will cause irreparable damage to ARAGEN, the exact amount of which will be impossible to ascertain. By reason of same, Individual hereby agrees that ARAGEN shall be entitled, as a matter of course, to provisional, interlocutory or permanent injunctive relief in order to prevent any such violation, in addition to such other recourses that may be available to ARAGEN by law or agreement between the parties.

16. This Agreement shall be governed by and interpreted according to the internal laws of the Commonwealth of Massachusetts, without regard to conflicts of laws principles.

17. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their heirs, successors, assigns and personal representatives. As used herein, the successors of ARAGEN shall include any successor by way of merger, consolidation, sale of all or substantially all of its assets, or similar reorganization.

18. All of the provisions of this Agreement are severable one from the other and the invalidity or unenforceability of any provisions of this Agreement shall not affect or limit the validity and enforceability of the other provisions hereof. If any provision is held excessively broad it shall be construed by limiting and reducing it so as to be enforceable to the extent permitted under applicable law.

19. INDIVIDUAL HEREBY ACKNOWLEDGES HAVING READ THIS AGREEMENT, UNDERSTOOD THE SAME IN A PRUDENT MANNER, HAVING HAD THE OPPORTUNITY TO OBTAIN INDEPENDENT LEGAL ADVICE IN RESPECT OF IT AND HEREBY AGREES TO ITS TERMS.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the day and year first above written.

ARAGEN SCIENCES INC.

By: _[signature]_

Name : Elizabeth Garcia

Title : Associate Director Human Resources

_[signature]_ 02/04/19

Individual's Name : Ramesh Subramanian

Aragen Bioscience, Inc., 380 Woodview Ave., Morgan Hill, CA. 95037 T: 408.779.1700 F: 408.779.1711



January 30, 2019

Ramesh Subramanian,
37 Oak Ridge Drive,
Voorhees, NJ 08043.

Dear Ramesh,

It is my pleasure to offer you the position of **"Chief Commercial Officer"** with Aragen Bioscience Inc. ("Aragen", the "Company"), a 100% subsidiary company of GVK Biosciences (India), starting Friday February 1, 2019 or at another mutually agreeable date. In this position, you will report to Chief Executive Officer of the group, covering **the given scope for GVK BIO & Aragen.**

You will be an employee at will, whose employment may be terminated either by you or by the Company at any time and for any reason, or no stated reason, subject to any benefits provided under Annexure 1. Any controversy, claim arising out of or relating to your employment by Aragen, or the termination of that employment, will be settled by binding arbitration. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction over the matter.

You shall devote your full business time, best efforts, skill, knowledge, attention and energies to the Company's business and to the performance of your duties and responsibilities as an employee of the Company, and shall not engage in any other business activities without prior approval from the Company. By accepting employment with the Company, you represent that you are not bound by any employment contract, restrictive covenant or other restriction preventing you from entering into employment with or carrying out your responsibilities for the Company, or which is in any way inconsistent with the terms of this letter.

Your duties will be performed from your home office at 37, Oak Ridge Drive, Voorhees, NJ 08043 subject to business travel as required.

For your services, you will be paid a base salary at the rate of USD [redacted] per year. Your salary shall be payable in accordance with the Company's standard payroll schedule and shall be subject to applicable taxes and withholdings. Your salary shall be reviewed not less often than annually in accordance with the Company's policies and standard procedures, and may be adjusted by the Company in its sole discretion.

In addition, you will receive Sales Bonus compensation on attainment of Sales targets established by your manager on an annual basis. Your target Sales Bonus will be 30% of your base salary i.e. USD [redacted] per year. The actual amount of your Bonus, if any, will be paid (but in no event later than three months following the year in which it is earned), provided that you are still employed on the last day of the year in which it is earned, and have neither resigned nor been terminated for Cause before the date of payment.



Your Sales Bonus compensation is in accordance with GVK BIO's (parent company) FY'20 Sales Bonus Compensation Plan. This will be calculated and paid annually. Company reserves the unilateral right to modify the Sales Bonus Compensation Plan at any time.

In addition to the above, you will receive a car allowance of (i) **USD** $750 per month which includes gasoline, maintenance purchased for that auto, and (ii) the Company will either provide, or reimburse you for, a computer and peripherals for home office use and a cell phone (and vonage for abroad calls) for business use, and will reimburse you for internet and cell phone fees in accordance with company policy.

In addition, reasonable incidental expenses associated with client contacts, including highway tolls, will be reimbursed in accordance with Aragen's established policies.

Business Travel will be in accordance with Company policy, with any upgrades in class to be approved by the Company, none the less, the individual will be allowed to use business class for any international travel exceeding 7 hours in duration.

The Company has an establish 401 k deferred compensation plan that will allow you to defer your compensation in a retirement savings plan. The Company will match any amount that you defer, on a dollar for dollar basis, up to the 4% of your annual gross salary.

State and federal payroll taxes and your share of benefit contributions will be withheld from your salary, your bonus and from your incentive compensation payments.

Your performance and compensation will be reviewed periodically in accordance with Aragen's standard practices, at which time adjustments may or may not be made.

Your normal work week will commence on Monday and go through Friday, however, at times it is expected that you may need to work overtime on weekends and weekdays in order to fulfil the requirements of your position. In such cases, you will not be eligible for overtime pay.

As a full-time employee, you will be eligible for the following benefits.
- Medical, vision and dental insurance (a portion of the premium for each is paid by the employee)
- Vacation- accruing at the rate of 15 days per year and Sick leave accruing at the rate of 5 days per year
- Ten paid holidays
- 401K plan with Matching

All of the above is reflective of, and subject to, the policies in effect at the present time and may be re-evaluated and revised by the Company at its discretion at any time.

As a condition of employment, at the time you report to work, you will be required to produce evidence that you are eligible to work legally in the United States and you will be required to sign Aragen's Employment and Confidentiality Agreement.

You recognize that during your employment, you will be involved in matters of a highly confidential nature and you agree to maintain all information with regard to the Company in the



strictest confidence. Further, as a condition of employment and prior to your Start Date, you are required to sign the Confidentiality and Ownership of Confidential Information (the "Confidentiality Agreement" that accompanies this letter, the terms of which are incorporated into this agreement by reference. Either during or after your employment by the Company, you will not disparage the Company or its affiliates, or its or their officers, directors, employees, products or services.

In the event of any dispute or claim relating to or arising out of your employment relationship with the Company (including the interpretation of this letter) and arising from any source (including but not limited to federal, state, and common law), you and the Company agree that all such disputes shall be fully and finally resolved by binding arbitration conducted by under the auspices of the American Arbitration Association ("AAA"), provided that the Company may bring suit for relief, including injunctive relief, for a breach of threatened breach of paragraph 5 or the Confidentiality Agreement referred to therein. This agreement to arbitrate any disputes shall extend to any claims against any affiliate of the Company and, when acting in such capacity, to any officer, director, shareholder, employee, or agent of each party. The arbitrator shall have the same, but no greater, remedial authority than would a court hearing the same dispute and shall have the authority to order such discovery as is agreed upon by the parties or as the arbitrator deems appropriate. The arbitrator shall issue a written award and decision explaining the basis for it. The award of the arbitrator shall be final and binding, and judgment upon it may be entered by any state or federal court having jurisdiction thereof. The Company shall be responsible for the fees and costs of the arbitrator. Any filing or administrative fees shall be borne initially by the party requesting arbitration, but if those fees exceed those applicable in the State of California Circuit Courts, the excess shall be borne by the Company. The prevailing party in such arbitration, as determined by the arbitrator, and in any enforcement or other court proceedings, shall be entitled, to the extent permitted by law, to reimbursement from the other party for all of the prevailing party's costs (including the arbitrator's costs and fees), expenses, and attorneys' fees. The arbitration shall be conducted in the State of California, at a time and place to be determined by the arbitrator unless the parties agree otherwise.

This letter (including the Confidentiality Agreement) reflects the full and complete understanding and agreement between the Company and you regarding your employment with the Company, and it supersedes any prior written or oral negotiation, offer or agreement regarding your employment relationship with the Company. This letter, including its terms and conditions, shall be governed by the State of California law. This letter, including its terms and conditions, may not be modified or amended except by a written agreement, signed by an authorized representative of the Company and by you (and your at-will employment status may not be changed). This letter may, however, be supplemented by written policies and procedures established by the Company from time to time, which policies and procedures (whether set forth in an employee handbook or otherwise) are generally applicable to the Company's other employees. In the event of a conflict between this letter and any Company policy or procedure, the provisions of this letter shall prevail.

This offer of employment is valid through February 1, 2019, after which it is void. If this offer is acceptable to you under the terms and conditions herein, please email me a signed copy of this letter as soon as possible, but in any event by the end of the business day.

380, Wondview Avenue, Morgan Hill, CA 95037



We are looking forward to you joining us. If you have any questions, please do not hesitate to write or call me.

Sincerely,

Manni Kantipudi
Chairman

I accept this employment offer. No oral or other written commitments have been made concerning my employment.

Signature: _____ Date: 01/30/19



Annexure 1

a. <u>Termination by the Company for Cause</u>:

Subject to the terms and conditions of this Agreement, your employment with the Company can be terminated by the Company without notice for Cause (as defined below). The term "Cause", as used herein, shall mean

(i) an intentional act of dishonesty by the Executive causing material harm to the Company (for the purpose of the preceding clause, the term 'material harm' includes monetary loss to the Company in excess of $5000);

(ii) the knowing improper disclosure by you of confidential information relating to the Company's business in breach of any agreement to which you are a party that causes material harm to the Company;

(iii) your habitual drunkenness or narcotic drug addiction;

(iv) your conviction (including by plea of guilty or nolo contendere) for a felony crime (A) for theft or fraud or (B) that is punishable by imprisonment (whether or not you are sentenced to imprisonment);

(v) your willful refusal to perform, or the gross neglect of, the duties assigned to you under this Agreement, provided that such duties assigned are consistent with your Position and are lawful and ethical;

(vi) your willful breach of any law that has a material adverse effect on the Company;

(vii) any material breach by you of the terms and conditions of a written policy of the Company in effect during the term of employment, which policy provides that an employee of the Company may be terminated for a breach or violation of such policy; or

(viii) any material breach of the terms and conditions of this Agreement by you.

Termination of employment of you by the Company for Cause pursuant to this Section shall be made by the Company by providing a written notice to you of such termination for Cause (including a description of the events, circumstances or conditions that constitute such for Cause termination). In the event of termination for Cause under this Section, you shall be entitled to receive the Accrued Rights (as defined herein) through the date of such termination.

b. <u>Termination by the Company for Disability.</u>

If the Company determines that as a result of a medically determinable physical or mental illness, injury, or congenital condition, you are unable to perform the principal duties of your employment, with or without reasonable accommodation, it may terminate your employment by reason of Disability, subject to applicable law. Upon termination by reason of Disability, you shall be entitled to receive the Accrued Rights through the date of termination.

c. <u>Termination by the Company without Cause.</u>

Subject to the terms and conditions of this Agreement, if your employment with the Company is terminated by the Company without Cause, and other than for Disability, you shall (i) receive the Accrued Rights and (ii) continue to receive as severance pay the current Base Salary for a period



**of 45 days** from the date of such termination notification, provided that you execute, and do not revoke a release, in the form acceptable to the Company, of any claims that you may have against the Company and its affiliates relating to your employment by the Company, and the termination of such employment. Such release must be executed, and the period for revocation must have expired, by the 20th day after the date of termination. In the event that you fail to execute the release prior to the expiration period, or revoke the release, you will forfeit any severance pay and will immediately repay any severance pay previously received, which repayment obligation may be offset against any other amounts owed by the company to you. Each instalment of severance pay shall be considered a separate "payment" for purposes of Section 409A of the Internal Revenue Code. If you obtain other employment within 45 days from the date of termination, your severance will be reduced by your compensation from such other employment. You will notify the company immediately upon obtaining other employment during the severance pay period, and upon request will certify that you have not obtained other employment (or as to the amount of compensation received) as a condition to receipt of further instalments of severance pay.

Accrued Rights shall mean: (i) any Base Salary or other compensation or bonus that was earned up until the date of Executive's employment with the Company is terminated, (ii) reimbursement of approved expenses or other approved amounts incurred by you for official purposes prior to the date your employment with the Company is terminated, and (iii) any rights and benefits that you may have in respect to any other compensation or any employee benefit plans or programs of the Company determined in accordance with the terms of such other compensation arrangements, plans or programs

In case of termination arises due to position elimination, Company will make commercially reasonable efforts to redeploy you into other suitable positions in the organization first, before they invoke the above clause, provided that the foregoing shall not preclude the Company from terminating you in its sole discretion.

Termination by you:

In the event you choose to terminate your employment with the Company we ask that you provide a written notice of **forty five days** to the Company, to ensure the professional coordination and continued success to all parties. Considering this understanding we would like to extend 45 days severance clause as mentioned above.