# EXHIBIT 1-E



# EMPLOYMENT/WORKPLACE RULES DEMAND FOR ARBITRATION

To ensure your demand is processed promptly, please file online at www.adr.org/support. Complete this form, provide last known email addresses and include a copy of the Arbitration Agreement, Plan or Contract.

## Parties (Claimant)

| | | |
|---|---|---|
| Name of Claimant: Ramesh Subramanian | | |
| Address: 37 Oak Ridge Drive | | |
| City: Voorhees | State: New Jersey | Zip Code: 08043 |
| Phone No.: | Email Address: ramesh.wemba35@gmail.com | |
| Representative's Name (if known): Edward F. Roche, Brett M. Neve, and Samantha B. Taylor | | |
| Firm (if applicable): Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP | | |
| Representative's Address: PO Box 2611 | | |
| City: Raleigh | State: North Carolina | Zip Code: 27602-2611 |
| Phone No.: 919-821-1220 | Email Address: eroche@smithlaw.com; bneve@smithlaw.com; staylor@smithlaw.com | |

## Parties (Respondent)

| | | |
|---|---|---|
| Name of Respondent: Aragen Bioscience Inc. | | |
| Address: 380 Woodview Ave | | |
| City: Morgan Hill | State: California | Zip Code: 95037 |
| Phone No.: 408-549-9200 | Email Address: info@aragen.com | |
| Representative's Name (if known): | | |
| Firm (if applicable): | | |
| Representative's Address: | | |
| City: | State: Select... | Zip Code: |
| Phone No.: | Email Address: | |

**Mediation:** If you would like the AAA to contact the other parties and attempt to arrange mediation, please check this box

Claim: What was/is the employee/worker's annual wage range? ☐ Less than $100,000  ☐ $100,000-$250,000  ☑ Over $250,000
*Note: This question is required by California law.*

Amount of Claim: $2,000,000

Claim involves: ☐ Statutorily Protected Rights  ☑ Non-Statutorily Protected Rights

In detail, please describe the nature of each claim. You may attach additional pages if necessary:

See attached Demand for Arbitration.

# American Arbitration Association®

# EMPLOYMENT/WORKPLACE RULES DEMAND FOR ARBITRATION

To ensure your demand is processed promptly, please file online at www.adr.org/support. Complete this form, provide last known email addresses and include a copy of the Arbitration Agreement, Plan or Contract.

## Parties (Claimant)

| | | |
|---|---|---|
| Name of Claimant: | | |
| Address: | | |
| City: | State: Select... | Zip Code: |
| Phone No.: | Email Address: | |
| Representative's Name (if known): | | |
| Firm (if applicable): | | |
| Representative's Address: | | |
| City: | State: Select... | Zip Code: |
| Phone No.: | Email Address: | |

## Parties (Respondent)

| | | |
|---|---|---|
| Name of Respondent: Aragen Life Sciences Private Limited f/k/a GVK Biosciences | | |
| Address: 28 A, IDA Nacharam Hyderabad 500 076, India | | |
| City: | State: Select... | Zip Code: |
| Phone No.: +91 40 6692 9999 | Email Address: info@aragen.com | |
| Representative's Name (if known): | | |
| Firm (if applicable): | | |
| Representative's Address: | | |
| City: | State: Select... | Zip Code: |
| Phone No.: | Email Address: | |

**Mediation:** If you would like the AAA to contact the other parties and attempt to arrange mediation, please check this box

Claim: What was/is the employee/worker's annual wage range? ☐ Less than $100,000 ☐ $100,000-$250,000 ☐ Over $250,000
*Note: This question is required by California law.*

Amount of Claim:

Claim involves: ☐ Statutorily Protected Rights ☐ Non-Statutorily Protected Rights

In detail, please describe the nature of each claim. You may attach additional pages if necessary:



# AMERICAN ARBITRATION ASSOCIATION®

# EMPLOYMENT/WORKPLACE RULES
# DEMAND FOR ARBITRATION

| | |
|---|---|
| Other Relief Sought: ☑ Attorneys Fees ☐ Interest ☑ Arbitration Costs ☑ Punitive/ Exemplary<br>☑ Other: Direct, incidental, and consequential damages | |
| Please describe the qualifications for arbitrator(s) to hear this dispute:<br><br>Experience in business law. | |
| Hearing: Estimated time needed for hearings overall: | hours or 2      days |
| Hearing Locale: San Francisco<br>*(check one)* ☑ Requested by Claimant ☐ Locale provision included in the contract | |
| Filing Fee requirement or $350 (max amount per AAA)<br>Filing by Company: ☐ $2,450 single arbitrator ☐ $3,050 three arbitrator panel | |
| Notice: To begin proceedings, **please file online at www.adr.org/fileonline**. You will need to upload a copy of this Demand and the Arbitration Agreement, and pay the appropriate fee. | |
| Signature (may be signed by a representative):<br>/s/ Edward F. Roche | Date:<br>07/18/2025 |
| Pursuant to Section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California. Only those disputes arising out of employer plans are included in the consumer definition. If you believe that you meet these requirements, you must submit to the AAA a declaration under oath regarding your monthly income and the number of persons in your household. Please contact the AAA's Western Case Management Center at 1-800-778-7879. If you have any questions regarding the waiver of administrative fees, AAA Customer Service can be reached at 1-800-778-7879. Please visit our website at www.adr.org/support to file this case online. | |

BEFORE THE AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| RAMESH SUBRAMANIAN,<br><br>    Claimant,<br><br>v.<br><br>ARAGEN BIOSCIENCE INC. and<br>ARAGEN LIFE SCIENCES PRIVATE<br>LIMITED f/k/a GVK BIOSCIENCES,<br><br>    Respondents. | AAA No. _____<br><br>**DEMAND FOR ARBITRATION** |

Ramesh Subramanian, complaining of Respondents Aragen Bioscience Inc. ("Aragen US") and Aragen Life Sciences Private Limited f/k/a GVK Biosciences ("Aragen India") (together, "Aragen"), hereby submits this Demand for Arbitration, and alleges as follows:

## NATURE OF THE ACTION

1. This dispute concerns Aragen's efforts to retaliate against one of its former executives for voluntarily resigning from the company and becoming the Global CEO of another biotechnology company.

2. In its effort to punish Mr. Subramanian, Aragen fabricated baseless allegations of misconduct as a pretext for its unlawful cancellation of Mr. Subramanian's vested Aragen stock options. These stock options were an important part of the compensation Mr. Subramanian earned during his five years as Chief Commercial Officer ("CCO") of Aragen.

3. Mr. Subramanian has been wrongfully deprived of stock options that, according to a recent valuation, would have been worth circa $2M.

## PARTIES

4. Mr. Subramanian is a United States citizen, residing in Voorhees, New Jersey.

5. Aragen US is a California corporation. Its principal office is in Morgan Hill, California.

1

6. Aragen India is an Indian private limited company and the corporate parent of Aragen US. Its principal office is in Hyderabad, India.

## FACTS

**a. Mr. Subramanian entered into agreements with Aragen upon his acceptance of employment and became part of Aragen's stock option plan.**

7. Mr. Subramanian served as CCO of Aragen for over five years, from February 1, 2019, until July 31, 2024.

8. Aragen US offered Mr. Subramanian the role of CCO through a formal offer letter dated January 30, 2019 (the "Employment Letter").

9. The Employment Letter incorporated by reference a Non-Competition, Confidentiality and Ownership of Confidential Information Agreement (the "Agreement"), which Mr. Subramanian was required to sign as a condition of his employment with Aragen US. Mr. Subramanian signed the Agreement on February 4, 2019.

10. Annexure 1 to the Employment Letter provides that Mr. Subramanian shall have "Accrued Rights" consisting of:

> (i) any Base Salary or other compensation or bonus that was earned up until the date [his] employment with the Company is terminated, (ii) reimbursement of approved expenses ... incurred ... prior to the date [his] employment with the Company is terminated, and (iii) any rights and benefits that [he] may have in respect to any other compensation or any employee benefit plans or programs of the Company determined in accordance with the terms of such other compensation arrangements, plans or programs.

11. Under Annexure 1, Mr. Subramanian would have been "entitled to receive the Accrued Rights" on his departure, even if terminated for cause, "through the date of termination."

12. Under Annexure 1, any termination for cause "shall be made by [Aragen US] by providing a written notice to you of such termination for Cause . . . ."

13. As an employee of Aragen US, Mr. Subramanian was eligible to receive stock options under Aragen's 2017 Employee Stock Option Plan (the "ESOP Plan") based on his performance.

14. Although Mr. Subramanian was an employee of Aragen US, the stock options issued to him under the ESOP Plan were to be stock options issued by Aragen India.

15. The Aragen ESOP Plan provides that when an employee resigns, all stock options that remain *unvested* as of the date of resignation are cancelled.

16. *Vested* but unexercised stock options, however, can be cancelled only in three circumstances:

   a. If the employee abandons the stock options;

   b. If the employee breaches the confidentiality terms of the ESOP Plan, which require employees to keep the details of the ESOP Plan confidential and not disclose them to others at Aragen; or

   c. If the employee is terminated due to misconduct or breach of Aragen's policies or terms of employment.

17. Under the ESOP Plan, an employee retains all vested stock options when he resigns from Aragen.

b. **Mr. Subramanian received stock options as part of his compensation for serving as Aragen US's CCO for over five years.**

18. Mr. Subramanian was a highly valued member of the executive team during his five years at Aragen US.

19. Mr. Subramanian's high performance is reflected in the base compensation increase he received in 2022, and his promotion to Executive Vice President in 2023, as well as the stock options he received.

20. Mr. Subramanian received stock options from Aragen India, under the ESOP Plan, via grant letters dated July 1, 2019, and July 1, 2021.

21. Mr. Subramanian voluntarily resigned from Aragen US on July 31, 2024.

22. At the time of his resignation, Mr. Subramanian had a total of 300,090 vested stock options.

23. Mr. Subramanian has not exercised any of those stock options.

**c. Aragen used frivolous legal threats in an attempt to prevent Mr. Subramanian from working for another biotechnology company.**

24. On August 1, 2024, Mr. Subramanian became the Global CEO of PI Health Sciences ("PIHS").

25. On November 11, 2024, counsel for Aragen sent Mr. Subramanian a cease-and-desist letter the ("Cease and Desist") in which the company accused Mr. Subramanian, without any factual support, of breaching the Employment Letter and the Agreement.

26. The Cease and Desist asserted that Mr. Subramanian solicited three Aragen employees. In fact, Mr. Subramanian had no role in any of those employees' moves. All three were recruited by an independent search agency.

27. The Cease and Desist next asserted that Mr. Subramanian had solicited Aragen's clients. That assertion was generally vague on detail, except to name one specific Aragen client. In fact, Mr. Subramanian has not solicited any clients. PIHS had no business relationship or dealing with the sole client named in the Cease and Desist.

28. The Cease and Desist also asserted that Mr. Subramanian had misused Aragen's confidential information. Mr. Subramanian has not used any of Aragen's confidential information. The Cease and Desist provided no specific facts whatsoever on the supposed use of confidential information.

29. On November 18, 2024, Mr. Subramanian's counsel responded in writing and specifically denied each of the allegations against Mr. Subramanian (the "Response Letter").

30. Since that letter, Aragen has not engaged any further in communications with Mr. Subramanian or PIHS concerning any supposed solicitation of clients or employees or misuse of any confidential information.

31. This further demonstrates that the assertions of misconduct were unfounded.

**d. When those legal threats failed, Aragen retaliated by purporting to cancel Mr. Subramanian's stock options.**

32. After months of silence, Aragen retaliated further, this time via a letter (the "Cancellation Letter").

33. The Cancellation Letter came from Aragen India, but also discussed Aragen US and used supposed breaches of Mr. Subramanian's agreements with Aragen US to justify the action described in the Cancellation Letter.

34. In the Cancellation Letter, dated March 3, 2025, Aragen India told Mr. Subramanian that all his vested stock options were "cancelled / lapsed / forfeited" as a result of his alleged violations of the terms of the Employment Letter between Aragen US and Mr. Subramanian, the Confidentiality Agreement between Aragen US and Mr. Subramanian, and Aragen US's Employee Handbook.

35. The Cancellation Letter contained a series of far-fetched and pretextual assertions seeking to justify the unlawful deprivation of Mr. Subramanian's vested stock options.

36. The Cancellation Letter again insisted that Mr. Subramanian must have solicited employees. The Cancellation Letter purported to respond to the Response Letter merely by claiming that the timing of the three former Aragen employees' joining PIHS "indicat[es] that such hires are not co-incidental in nature."

37. Beyond this conjecture, the Cancellation Letter provided no facts supporting the assertions that Mr. Subramanian had solicited those employees.

38. The Cancellation Letter made no further mention of the frivolous assertion in the Cease and Desist that Mr. Subramanian had solicited Aragen clients.

5

39. The Cancellation Letter attempted to bolster its meager factual basis by referring to a forensic review of Mr. Subramanian's emails.

40. The Cancellation Letter asserted that Mr. Subramanian had:

   a. Shared allegedly confidential information to his own personal email in 2023, approximately a year before he resigned from Aragen; and

   b. Shared allegedly confidential information with two other individuals in March 2020 and May 2023, years before the Cease and Desist and the Cancellation Letter.

41. The sharing of this information with two individuals in March 2020 and May 2023 was not contrary to any contractual obligation or Aragen policy.

42. The Cancellation Letter claimed that Mr. Subramanian's alleged actions "are severely detrimental to the interests and business of [Aragen US], [Aragen India], and its group at large . . . ."

43. Aragen's threadbare allegations in the Cancellation Letter, and their tenuous relevance, further highlights the pretextual nature of Aragen's assertions and actions.

44. Aragen has no basis to deprive Mr. Subramanian of his vested stock options.

45. First, Mr. Subramanian did nothing wrong. He did not breach the Employment Letter, the Agreement, the Handbook, or the ESOP Plan.

46. Second, even Mr. Subramanian had breached any, none of the purported breaches would provide any legal basis for Aragen to cancel his vested stock options.

47. Third, under the ESOP Plan and the other governing documents, Aragen is not entitled to cancel Mr. Subramanian's vested stock options because he resigned voluntarily.

48. Fourth, even if Mr. Subramanian had been terminated—and even if he had been terminated for cause—Aragen would not have been entitled to cancel his stock options because the vested stock options were Accrued Rights under the Employment Letter. Under the Employment Letter, even upon termination for cause, Mr. Subramanian would have been "entitled to receive the Accrued Rights . . . through the date of such termination."

49. Accordingly, Mr. Subramanian is entitled to:

   a. Reinstatement of his stock options, with a fair opportunity to exercise them, or

   b. Compensation equivalent to the value of the stock options had he had a fair opportunity to exercise them.

e. **This dispute is subject to arbitration in California under the auspices of the American Arbitration Association.**

50. Pursuant to the Employment Letter, all disputes

   > relating to or arising out of [Mr. Subramanian's] employment relationship with [Aragen US] . . . shall be fully and finally resolved by binding arbitration conducted by [sic] under the auspices of the American Arbitration Association ("AAA") . . . [and] arbitration shall be conducted in the State of California[.]

## FIRST CAUSE OF ACTION
### (Breach of Contract)
### (Against Both Respondents)

51. The preceding paragraphs are all re-alleged and incorporated as if fully set forth herein.

52. The Employment Letter and the Aragen ESOP Plan are valid and binding contracts enforceable under applicable law.

53. Mr. Subramanian has performed all his material obligations under the Employment Letter and the Aragen ESOP Plan.

54. Respondents materially breached the Employment Letter and the Aragen ESOP Plan by cancelling Mr. Subramanian's stock options.

55. Mr. Subramanian has been unfairly deprived of compensation he earned during his tenure at Aragen as a result of Respondents' breaches.

56. Accordingly, Mr. Subramanian has suffered personal losses as a result of Respondents' breaches.

## SECOND CAUSE OF ACTION
### (Declaratory Judgment)
### (Against Both Respondents)

57. The preceding paragraphs are all re-alleged and incorporated as if fully set forth herein.

58. There is an actual and ripe dispute between Mr. Subramanian on one hand, and Respondents on the other, as to whether Mr. Subramanian has committed any material breach of the Employment Letter, the Agreement, or any other contract relating to Mr. Subramanian's employment with Aragen.

59. Furthermore, there is an actual and ripe dispute between Mr. Subramanian on one hand, and Respondents on the other, as to whether Respondents had authority under the Employment Letter or the Aragen ESOP Plan to cancel Mr. Subramanian's vested stock options.

60. The Arbitrator should enter a declaratory judgment declaring that (i) Mr. Subramanian has not materially breached the Employment Letter, the Agreement, or any other contract relating to Mr. Subramanian's employment with Aragen, (ii) Respondents' cancellation of Mr. Subramanian's vested stock options was a material breach of the Employment Letter and the Aragen ESOP Plan, and (iii) Mr. Subramanian's stock options must be reinstated, with a fair opportunity to exercise them, or Mr. Subramanian must be fairly compensated for the deprivation of his stock options.

## THIRD CAUSE OF ACTION
### (Unfair Trade Practices)
### (Against Both Respondents)

61. The preceding paragraphs are all re-alleged and incorporated as if fully set forth herein.

62. Aragen's retaliatory actions against Mr. Subramanian constitute unfair and deceptive business practices.

63. As a result of its unfair and deceptive business practices, Aragen should be required to pay punitive or enhanced damages, plus attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Subramanian prays for relief as follows:

1. An order that Respondents are liable for direct, incidental, and consequential damages in an amount to be determined;

2. A declaration that Respondents are in material breach of the Employment Letter and the Aragen ESOP Plan;

3. Reinstatement of Mr. Subramanian's stock options, with the fair opportunity to exercise them, or compensation equivalent to the fair value Mr. Subramanian could have obtained upon exercising the options;

4. Punitive and/or enhanced damages based on Aragen's unfair trade practices;

5. All costs associated with this action, including, but not limited to, his attorneys' fees; and

6. All such other and further relief as the Arbitrator deems just and equitable under the circumstances.

Dated: July 18, 2025.

                    SMITH, ANDERSON, BLOUNT, DORSETT,
                    MITCHELL & JERNIGAN, L.L.P.

                    */s/ Edward F. Roche*
                    Edward F. Roche
                    Brett M. Neve
                    Samantha B. Taylor
                    Post Office Box 2611
                    Raleigh, NC 27602-2611
                    Ph: (919) 821-1220
                    Fax: (919) 821-6800
                    eroche@smithlaw.com
                    bneve@smithlaw.com
                    staylor@smithlaw.com

                    *Attorneys for Claimant*



January 30, 2019

Ramesh Subramanian,
37 Oak Ridge Drive,
Voorhees, NJ 08043.

Dear Ramesh,

It is my pleasure to offer you the position of **"Chief Commercial Officer"** with Aragen Bioscience Inc. ("Aragen", the "Company"), a 100% subsidiary company of GVK Biosciences (India), starting Friday February 1, 2019 or at another mutually agreeable date. In this position, you will report to Chief Executive Officer of the group, covering **the given scope for GVK BIO & Aragen**.

You will be an employee at will, whose employment may be terminated either by you or by the Company at any time and for any reason, or no stated reason, subject to any benefits provided under Annexure 1. Any controversy, claim arising out of or relating to your employment by Aragen, or the termination of that employment, will be settled by binding arbitration. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction over the matter.

You shall devote your full business time, best efforts, skill, knowledge, attention and energies to the Company's business and to the performance of your duties and responsibilities as an employee of the Company, and shall not engage in any other business activities without prior approval from the Company. By accepting employment with the Company, you represent that you are not bound by any employment contract, restrictive covenant or other restriction preventing you from entering into employment with or carrying out your responsibilities for the Company, or which is in any way inconsistent with the terms of this letter.

Your duties will be performed from your home office at 37, Oak Ridge Drive, Voorhees, NJ 08043 subject to business travel as required.

For your services, you will be paid a base salary at the rate of **USD 308,000** per year. Your salary shall be payable in accordance with the Company's standard payroll schedule and shall be subject to applicable taxes and withholdings. Your salary shall be reviewed not less often than annually in accordance with the Company's policies and standard procedures, and may be adjusted by the Company in its sole discretion.

In addition, you will receive Sales Bonus compensation on attainment of Sales targets established by your manager on an annual basis. Your target Sales Bonus will be 30% of your base salary i.e. **USD 92,400** per year. The actual amount of your Bonus, if any, will be paid (but in no event later than three months following the year in which it is earned), provided that you are still employed on the last day of the year in which it is earned, and have neither resigned nor been terminated for Cause before the date of payment.



Your Sales Bonus compensation is in accordance with GVK BIO's (parent company) FY'20 Sales Bonus Compensation Plan. This will be calculated and paid annually. Company reserves the unilateral right to modify the Sales Bonus Compensation Plan at any time.

In addition to the above, you will receive a car allowance of (i) **USD** $750 per month which includes gasoline, maintenance purchased for that auto, and (ii) the Company will either provide, or reimburse you for, a computer and peripherals for home office use and a cell phone (and vonage for abroad calls) for business use, and will reimburse you for internet and cell phone fees in accordance with company policy.

In addition, reasonable incidental expenses associated with client contacts, including highway tolls, will be reimbursed in accordance with Aragen's established policies.

Business Travel will be in accordance with Company policy, with any upgrades in class to be approved by the Company, none the less, the individual will be allowed to use business class for any international travel exceeding 7 hours in duration.

The Company has an establish 401 k deferred compensation plan that will allow you to defer your compensation in a retirement savings plan. The Company will match any amount that you defer, on a dollar for dollar basis, up to the 4% of your annual gross salary.

State and federal payroll taxes and your share of benefit contributions will be withheld from your salary, your bonus and from your incentive compensation payments.

Your performance and compensation will be reviewed periodically in accordance with Aragen's standard practices, at which time adjustments may or may not be made.

Your normal work week will commence on Monday and go through Friday, however, at times it is expected that you may need to work overtime on weekends and weekdays in order to fulfil the requirements of your position. In such cases, you will not be eligible for overtime pay.

As a full-time employee, you will be eligible for the following benefits.
- Medical, vision and dental insurance (a portion of the premium for each is paid by the employee)
- Vacation- accruing at the rate of 15 days per year and Sick leave accruing at the rate of 5 days per year
- Ten paid holidays
- 401K plan with Matching

All of the above is reflective of, and subject to, the policies in effect at the present time and may be re-evaluated and revised by the Company at its discretion at any time.

As a condition of employment, at the time you report to work, you will be required to produce evidence that you are eligible to work legally in the United States and you will be required to sign Aragen's Employment and Confidentiality Agreement.

You recognize that during your employment, you will be involved in matters of a highly confidential nature and you agree to maintain all information with regard to the Company in the



strictest confidence. Further, as a condition of employment and prior to your Start Date, you are required to sign the Confidentiality and Ownership of Confidential Information (the "Confidentiality Agreement" that accompanies this letter, the terms of which are incorporated into this agreement by reference. Either during or after your employment by the Company, you will not disparage the Company or its affiliates, or its or their officers, directors, employees, products or services.

In the event of any dispute or claim relating to or arising out of your employment relationship with the Company (including the interpretation of this letter) and arising from any source (including but not limited to federal, state, and common law), you and the Company agree that all such disputes shall be fully and finally resolved by binding arbitration conducted by under the auspices of the American Arbitration Association ("AAA"), provided that the Company may bring suit for relief, including injunctive relief, for a breach of threatened breach of paragraph 5 or the Confidentiality Agreement referred to therein. This agreement to arbitrate any disputes shall extend to any claims against any affiliate of the Company and, when acting in such capacity, to any officer, director, shareholder, employee, or agent of each party. The arbitrator shall have the same, but no greater, remedial authority than would a court hearing the same dispute and shall have the authority to order such discovery as is agreed upon by the parties or as the arbitrator deems appropriate. The arbitrator shall issue a written award and decision explaining the basis for it. The award of the arbitrator shall be final and binding, and judgment upon it may be entered by any state or federal court having jurisdiction thereof. The Company shall be responsible for the fees and costs of the arbitrator. Any filing or administrative fees shall be borne initially by the party requesting arbitration, but if those fees exceed those applicable in the State of California Circuit Courts, the excess shall be borne by the Company. The prevailing party in such arbitration, as determined by the arbitrator, and in any enforcement or other court proceedings, shall be entitled, to the extent permitted by law, to reimbursement from the other party for all of the prevailing party's costs (including the arbitrator's costs and fees), expenses, and attorneys' fees. The arbitration shall be conducted in the State of California, at a time and place to be determined by the arbitrator unless the parties agree otherwise.

This letter (including the Confidentiality Agreement) reflects the full and complete understanding and agreement between the Company and you regarding your employment with the Company, and it supersedes any prior written or oral negotiation, offer or agreement regarding your employment relationship with the Company. This letter, including its terms and conditions, shall be governed by the State of California law. This letter, including its terms and conditions, may not be modified or amended except by a written agreement, signed by an authorized representative of the Company and by you (and your at-will employment status may not be changed). This letter may, however, be supplemented by written policies and procedures established by the Company from time to time, which policies and procedures (whether set forth in an employee handbook or otherwise) are generally applicable to the Company's other employees. In the event of a conflict between this letter and any Company policy or procedure, the provisions of this letter shall prevail.

This offer of employment is valid through February 1, 2019, after which it is void. If this offer is acceptable to you under the terms and conditions herein, please email me a signed copy of this letter as soon as possible, but in any event by the end of the business day.

380, Woodview Avenue, Morgan Hill, CA 95037



We are looking forward to you joining us. If you have any questions, please do not hesitate to write or call me.

Sincerely,

Manni Kantipudi
Chairman


I accept this employment offer. No oral or other written commitments have been made concerning my employment.


Signature: _____    Date: _____



Annexure 1

a. <u>Termination by the Company for Cause</u>:

Subject to the terms and conditions of this Agreement, your employment with the Company can be terminated by the Company without notice for Cause (as defined below). The term "Cause", as used herein, shall mean

- (i) an intentional act of dishonesty by the Executive causing material harm to the Company (for the purpose of the preceding clause, the term 'material harm' includes monetary loss to the Company in excess of $5000);
- (ii) the knowing improper disclosure by you of confidential information relating to the Company's business in breach of any agreement to which you are a party that causes material harm to the Company;
- (iii) your habitual drunkenness or narcotic drug addiction;
- (iv) your conviction (including by plea of guilty or nolo contendere) for a felony crime (A) for theft or fraud or (B) that is punishable by imprisonment (whether or not you are sentenced to imprisonment);
- (v) your willful refusal to perform, or the gross neglect of, the duties assigned to you under this Agreement, provided that such duties assigned are consistent with your Position and are lawful and ethical;
- (vi) your willful breach of any law that has a material adverse effect on the Company;
- (vii) any material breach by you of the terms and conditions of a written policy of the Company in effect during the term of employment, which policy provides that an employee of the Company may be terminated for a breach or violation of such policy; or
- (viii) any material breach of the terms and conditions of this Agreement by you.

Termination of employment of you by the Company for Cause pursuant to this Section shall be made by the Company by providing a written notice to you of such termination for Cause (including a description of the events, circumstances or conditions that constitute such for Cause termination). In the event of termination for Cause under this Section, you shall be entitled to receive the Accrued Rights (as defined herein) through the date of such termination.

b. <u>Termination by the Company for Disability.</u>

If the Company determines that as a result of a medically determinable physical or mental illness, injury, or congenital condition, you are unable to perform the principal duties of your employment, with or without reasonable accommodation, it may terminate your employment by reason of Disability, subject to applicable law. Upon termination by reason of Disability, you shall be entitled to receive the Accrued Rights through the date of termination.

c. <u>Termination by the Company without Cause.</u>

Subject to the terms and conditions of this Agreement, if your employment with the Company is terminated by the Company without Cause, and other than for Disability, you shall (i) receive the Accrued Rights and (ii) continue to receive as severance pay the current **Base Salary for a period**



**of 45 days** from the date of such termination notification, provided that you execute, and do not revoke a release, in the form acceptable to the Company, of any claims that you may have against the Company and its affiliates relating to your employment by the Company, and the termination of such employment. Such release must be executed, and the period for revocation must have expired, by the 20th day after the date of termination. In the event that you fail to execute the release prior to the expiration period, or revoke the release, you will forfeit any severance pay and will immediately repay any severance pay previously received, which repayment obligation may be offset against any other amounts owed by the company to you. Each instalment of severance pay shall be considered a separate "payment" for purposes of Section 409A of the Internal Revenue Code. If you obtain other employment within 45 days from the date of termination, your severance will be reduced by your compensation from such other employment. You will notify the company immediately upon obtaining other employment during the severance pay period, and upon request will certify that you have not obtained other employment (or as to the amount of compensation received) as a condition to receipt of further instalments of severance pay.

Accrued Rights shall mean: (i) any Base Salary or other compensation or bonus that was earned up until the date of Executive's employment with the Company is terminated, (ii) reimbursement of approved expenses or other approved amounts incurred by you for official purposes prior to the date your employment with the Company is terminated, and (iii) any rights and benefits that you may have in respect to any other compensation or any employee benefit plans or programs of the Company determined in accordance with the terms of such other compensation arrangements, plans or programs

In case of termination arises due to position elimination, Company will make commercially reasonable efforts to redeploy you into other suitable positions in the organization first, before they invoke the above clause, provided that the foregoing shall not preclude the Company from terminating you in its sole discretion.

Termination by you:

In the event you choose to terminate your employment with the Company we ask that you provide a written notice of **forty five days** to the Company, to ensure the professional coordination and continued success to all parties. Considering this understanding we would like to extend 45 days severance clause as mentioned above.