UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RAMESH SUBRAMANIAN,<br><br>            Plaintiff,<br><br>     v.<br><br>ARAGEN LIFE SCIENCES PRIVATE LIMITED, et al.,<br><br>            Defendants. | Case No.   5:25-cv-09280-EJD<br><br>**TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE**<br><br>Re: Dkt. No. 5 |

Before the Court is Plaintiff Ramesh Subramanian's ("Subramanian") *ex parte* motion for an emergency temporary restraining order enjoining Defendants Aragen Bioscience, Inc. ("Aragen U.S.") and Aragen Life Sciences Private Limited F/K/A Cvk Biosciences ("Aragen India") (collectively, "Aragen") from maintaining a lawsuit filed in a court in India ("the India action") on October 13, 2025.  Mot., ECF Nos. 5, 7.

For the reasons explained below, the Court **GRANTS** Subramanian's motion.

## I.     BACKGROUND

This is an international anti-suit injunction case brought by an employee, Subramanian, against his former employer, Aragen.  Compl., ECF No. 1.  From January 2019 to July 2024, Subramanian was the Chief Commercial Officer of Aragen U.S., and the "scope" of his employment included services for Aragen India.  Mot. 1.

This conflict between the parties began after Subramanian resigned from Aragen and joined another company.  *Id.* at 3.  On November 11, 2024, Aragen sent Subramanian a cease-and-desist letter accusing him of unlawfully soliciting Aragen's employees and misusing confidential information.  *Id.*  Approximately one month later, Aragen sent a second letter informing

Case No.: 5:25-cv-09280-EJD
TRO AND ORDER TO SHOW CAUSE

1

1   Subramanian that his vested stock options were cancelled as a result of this alleged conduct. *Id.*

2   In response, Plaintiff initiated arbitration in California with the American Arbitration

3   Association ("AAA") to recover his vested stock options on July 18, 2025. *Id.* at 4. Shortly

4   thereafter, counsel for Plaintiff and Aragen began to discuss the arbitration proceedings.[1] *Id.* at 5.

5   At first, the parties disputed the correct forum and rules for the dispute, whether Aragen India was

6   subject to the arbitration clause, and which employment agreement governs the dispute. The two

7   agreements primarily at issue were the Employment Letter, which mandated arbitration under in

8   California, and the Employee Stock Option Plan ("ESOP"), which mandated arbitration under

9   India law but was silent as to the forum. *Id.*

10  But it appears the parties resolved these disputes. On September 26, 2025, the parties

11  reported to the AAA administrator that they stipulated to arbitrate the claims with AAA's

12  International Centre for Dispute Resolution ("ICDR"). *Id.* The stipulation provides in relevant

13  part: "Mr. Subramanian, Aragen Bioscience, Inc., and Aragen Life Sciences Ltd. (ALS Ltd.)

14  (collectively, "the Parties") agree to proceed with arbitration before the ICDR, under ICDR rules

15  and procedures . . . . ALS Ltd.'s consent to ICDR jurisdiction is explicitly limited to the agreement

16  in this case; outside of the Parties' current dispute, ALS Ltd. does not generally consent to

17  AAA/ICDR jurisdiction (under United States law, California law, or any other source of law or

18  agreement." *Id.* at 5–6. The parties appeared in the ICDR proceedings to discuss arbitrator

19  selection and other issues on October 14, 2025. *Id.* at 6.

20  Meanwhile, unbeknownst to Plaintiff, on October 13, 2025, Aragen India had filed a

21  proceeding in Hyderabad, India. *Id.* This action asks the court to declare that the above-

22  mentioned arbitration proceedings are "without jurisdiction, illegal, vexatious, unconscionable,

23  oppressive and in violation of the ESOP Plan 2017"; and "[p]ermanently restrain / injunct [Mr.

24  Subramanian] from initiating, continuing, or prosecution any arbitration or legal proceedings in

25  any foreign forum, including the American Arbitration Association . . . in relation to the ESOP

---

[1] Both Aragen U.S. and Aragen India have the same U.S. counsel. Mot. 5.

Case No.: 5:25-cv-09280-EJD
TRO AND ORDER TO SHOW CAUSE

2

1   Plan 2017 or disputes arising thereunder[.]" *Id.* at 6–7.  Aregan India sought emergency relief to

2   enjoin the entire arbitration proceedings, citing to the October 14, 2025, status conference

3   scheduled for the next day before the ICDR.  *Id.* at 7.  The India court has ordered Plaintiff to

4   appear in India on October 31, 2025.  *Id.* at 8.

5         Subramanian received notice of this lawsuit on October 25, 2025, and filed this action

6   three days later, on October 28, 2025.  *Id.*  The case was assigned to the Undersigned on October

7   29, 2025.  Subramanian now requests an order enjoining Aragen India from maintaining the

8   lawsuit in India.  *Id.*  Aragen has not yet been served, but Subramanian's counsel submitted a

9   declaration indicating that they have informed Aragen's counsel of this action and emailed counsel

10  all filings.  *See id.* at 8–9.

11  **II.    LEGAL STANDARD**

12        The Ninth Circuit in *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 991 (9th

13  Cir. 2006), established a three-part test for temporary injunctions in anti-suit actions such as this.

14  *See Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 881 (9th Cir. 2012) (reading *Gallo* and

15  related precedent as creating a three-part test for anti-suit injunctions).  First, a party seeking to

16  enjoin proceedings in a foreign court must show that the parties and issues are the same in the

17  matter at hand and the matter to be enjoined.  *Id.*  This is a functional inquiry that turns on whether

18  "all the issues in the foreign action . . . can be resolved in the local action."  *Id.* at 882–83 (quoting

19  *Applied Med. Distribution Corp. v. Surgical Co. BV*, 587 F.3d 909, 915 (9th Cir. 2009)) (alteration

20  in original).  Second, that party must show at least one *Unterweser* factor has been met.  *Id.* at 881.

21  There are four *Unterweser* factors: whether foreign litigation would "(1) frustrate a policy of the

22  forum issuing the injunction; (2) be vexatious or oppressive; (3) threaten the issuing court's *in*

23  *rem* or *quasi in rem* jurisdiction; or (4) where the proceedings prejudice other equitable

24  considerations."  *Gallo*, 446 F.3d at 990 (quoting *Seattle Totems Hockey Club, Inc. v. Nat'l*

25  *Hockey League*, 652 F.2d 852, 855 (9th Cir. 1981)).  Third, the moving party must show that an

26  anti-suit injunction's impact on comity would be "tolerable."  *Microsoft*, 696 F.3d at 881.  To

27  secure a temporary restraining order without notice, the moving party must also show "specific

28  Case No.: 5:25-cv-09280-EJD
    TRO AND ORDER TO SHOW CAUSE
                                    3

facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition"; and "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b).

### III. DISCUSSION

Based on the information currently before it, the Court finds Subramanian has presented facts sufficient to satisfy all three parts of the *Gallo* test and Rule 65 for the purposes of obtaining an *ex parte* temporary restraining order ("TRO").

First, the parties are identical in this action, the ICDR arbitration, and the India litigation, and the issues are functionally the same. In the India action, Aregan India contends that the ICDR proceeding is unauthorized and illegal due to a lack of jurisdiction. This presents an issue that can be resolved in the ICDR proceeding. The ICDR Rules provide that "[t]he arbitral tribunal shall have the power to rule on its own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement(s), or with respect to whether all of the claims, counterclaims, and setoffs made in the arbitration may be determined in a single arbitration." ICDR R. 19(1). In other words, an ICDR panel or arbitrator is empowered to resolve Aragen India's claim that it is not subject to arbitration before the ICDR.

Second, Subramanian has satisfied multiple *Unterweser* factors. The India action could threaten to undermine "a strong" local and national "policy favoring robust forum selection clauses." *Applied Medical*, 587 F.3d at 918–19; *Gallo*, 446 F.3d at 992 ("Without an anti-suit injunction in this case, the forum selection clause effectively becomes a nullity," and "[t]he potential implications for international commerce are considerable."). The Court finds sufficient evidence, at this time, that the forum selection clause in the Employment Letter likely binds all parties to arbitrate these claims before the ICDR in California. Even if there is a conflict between the arbitration forum selection clauses in the ESOP and the Employment Letter, the Employment Letter explicitly provides: "In the event of a conflict between this letter and any Company policy or procedure, the provisions of this letter shall prevail." Mot. 2. In other words, conflicts in the

1  ESOP, if any, would give way to the Employment Letter. Further, permitting the India action to
2  proceed could also "prejudice other equitable considerations." *Seattle Totems*, 652 F.2d at 855.
3  Specifically, it could render Aragen India's stipulation meaningless. While Aragen explicitly did
4  not waive its rights to raise jurisdictional arguments regarding claims arising under the ESOP, it
5  appears that the India action seeks to halt the ICDR arbitration proceedings entirely, not just as to
6  claims arising under the ESOP. Mot. 9 (the India action seeking a declaration "that the arbitration
7  proceedings . . . before the American Arbitration Association is without jurisdiction, illegal,
8  vexatious, unconscionable, oppressive and in violation of the ESOP Plan 2017.").

9  Third, this case does not likely implicate comity concerns. The dispute here involves
10 "private parties that previously agreed to litigate disputes arising out of their contract in
11 California." *Applied Medical*, 587 F.3d at 920. And where parties "have made a prior contractual
12 commitment to litigate disputes in a particular forum, upholding that commitment by enjoining
13 litigation in some other forum is unlikely to implicate comity concerns at all." *Microsoft*, 696
14 F.3d at 887.

15 Finally, Subramanian has established that the urgency of these circumstances warrants
16 emergency injunctive relief. Subramanian, a New Jersey resident, has been ordered to appear
17 before the District Court at Malkangiri, India in two days, on Friday, October 31. Subramanian
18 indicates that he received notice of this lawsuit for the first time on October 25. If Subramanian is
19 ordered to appear in person at a court in India in two days, he may be unable to prepare a defense
20 and could be deprived of his procedural due process rights. And notably, "[c]ourts around the
21 country regularly hold that the deprivation of a bargained-for choice of forum constitutes
22 irreparable harm sufficient to support an injunction." *Google LLC v. NAO Tsargrad Media*, No.
23 5:24-CV-05423-EJD, 2025 WL 964692, at *11 (N.D. Cal. Mar. 31, 2025) (cleaned up) (collecting
24 cases).

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS** Subramanian's *ex parte* motion for an emergency temporary restraining order. Aragen is **TEMPORARILY ENJOINED** from

Case No.: 5:25-cv-09280-EJD
TRO AND ORDER TO SHOW CAUSE
5

1   maintaining the India action.  This Order shall remain in effect until **November 12, 2025, at 11:59**

2   **p.m.** unless ordered for good cause or agreed to by the parties.

3       Aragen is **ORDERED TO SHOW CAUSE** in a hearing on **November 5, 2025, at 10:00**

4   **a.m.** why a preliminary anti-suit injunction should not issue.  The Court **ORDERS** counsel for

5   both sides to meet and confer regarding a briefing schedule, with a reply brief due no later than

6   November 4, 2025, at 3:00 p.m.  The parties shall file their joint proposed briefing schedule no

7   later than October 31, 2025, at 3:00 p.m.  The parties may stipulate to an extended briefing

8   schedule and later hearing date, provided that the parties also stipulate that the temporary

9   restraining order will continue in effect until that hearing date.

10      Subramanian is **ORDERED** to serve a copy of this Order to Show Cause and supporting

11  papers on Aragen within twenty-four hours of this Order.

12  **IT IS SO ORDERED.**

13  Dated: October 29, 2025

EDWARD J. DAVILA
United States District Judge

Case No.: 5:25-cv-09280-EJD
TRO AND ORDER TO SHOW CAUSE

6